## DORIS BEACH v. REGIONAL SCHOOL DISTRICT NUMBER 13 ET AL.
## (14731)

Dupont, C. J., and Lavery and Hennessy, Js.

---

Argued May 29—officially released August 13, 1996

*Robert P. Dutcher*, for the appellant (plaintiff).

*Arthur R. Riccio, Jr.*, for the appellees (defendants).

DUPONT, C. J. The plaintiff appeals from the judgment rendered in favor of the defendants following the denial by the trial court of the plaintiff's motion to set aside a jury verdict for the defendants Leo Baker, regional school district number 13 and its board of education[1] and to order a new trial. The jury's verdict

---

[1] The plaintiff's complaint alleges negligence against Leo Baker, the supervisor of buildings and grounds for regional school district number 13; Donald Harris, the acting head custodian at Coginchaug High School; Howard J. Kelley, the superintendent of schools; regional school district number 13;

was for the individual defendant Baker because he was "not liable due to governmental immunity," and this appeal concerns only Baker.[2]

The plaintiff brought an action against the defendants after she fell on a sidewalk of a municipal high school. The defendants' special defenses were contributory negligence, governmental immunity, and that the plaintiff's action was barred by the Workers' Compensation Act, General Statutes § 31-275 et seq. The plaintiff claims that (1) the trial court improperly determined that no unity of interest, as defined in General Statutes § 51-241, existed among the individual defendants and, (2) there was insufficient evidence for the jury to conclude that the special defense of governmental immunity barred the plaintiff's recovery. We affirm the judgment of the trial court.

The jury reasonably could have found the facts that follow. The plaintiff, a food service worker in the cafeteria at Coginchaug High School in Durham, while on her way to work on January 10, 1991, at 6:30 a.m., slipped and fell on the icy sidewalk between the north parking lot and the main entrance of the school. The plaintiff suffered physical injuries from the fall.

Although most of the cafeteria workers and the janitorial staff park on the south side of the school in order to approach the south cafeteria entrance, the plaintiff chose to park on the north side because her car had

its board of education; and the towns of Durham and Middlefield. The plaintiff's employer, Navin Brothers Food Service, Inc. (Navin), filed an intervening complaint against all defendants but did not participate in the trial. Both the plaintiff and Navin subsequently amended their complaints to exclude the towns of Durham and Middlefield. The amended complaint further claims indemnification by regional school district number 13 and its board of education pursuant to General Statutes § 10-235. The jury returned identical verdicts for the three individual defendants, but the plaintiff's motion to set aside the verdict related to only one of the three, the defendant Leo Baker, and regional school district number 13 and its board of education.

[2] As used in this opinion, the word defendant refers to Leo Baker.

been vandalized while parked in the south lot. Because cafeteria workers and the janitorial staff are among the first to arrive in the morning, Donald Harris, acting head custodian, worked on clearing the sidewalks leading to the south entrance to the school before clearing the sidewalks leading to the north entrance. On the morning of the plaintiff's fall, the superintendent of schools, Howard Kelley, had called for a two hour delay in the opening of school. The plaintiff had not learned of the delay and, as a consequence, arrived at the school at her usual time, before Harris had cleared the walk on which she fell. Kelley supervises the defendant, who is the supervisor of buildings and grounds; the defendant supervises Harris.

Prior to trial, the plaintiff filed a motion in limine requesting the trial court to find that the individual defendants, Kelley, Baker, and Harris, had a unity of interest and that the court should consider them a single party for the purpose of making peremptory challenges pursuant to General Statutes § 51-241.[3] The trial court denied this motion, stating that sufficient adversity existed among the defendants to treat them as separate parties[4] and allowed the defendants a total of ten

[3] General Statutes § 51-241 provides: "On the trial of any civil action to a jury, each party may challenge peremptorily three jurors. Where the court determines a unity of interest exists, several plaintiffs or several defendants may be considered as a single party for the purpose of making challenges, or the court may allow additional peremptory challenges and permit them to be exercised separately or jointly. For the purposes of this section, a 'unity of interest' means that the interests of the several plaintiffs or of the several defendants are substantially similar."

[4] This appeal concerns the individual defendant Baker only. Whether the other defendants should have had peremptory challenges, therefore, ordinarily would not recur in the event a new trial were necessary, because only the defendant Baker, regional school district number 13 and its board of education would be involved. No claim as to the unity of interest of the governmental defendants, for the purpose of peremptory challenges, has been made. We, nevertheless, resolve the issue. See *Mourison* v. *Hansen*, 128 Conn. 62, 67, 20 A.2d 84 (1941). We also review the claim because the plaintiff argues that she suffered the effect of an excessive number of peremptory challenges, causing an unfair trial.

peremptory challenges to the plaintiff's four.[5]

## I

### A

As a preliminary matter, we must determine whether the trial court properly considered the number of allowable peremptory challenges under the current version of § 51-241, amended in 1993, or whether it should have applied the statute as it existed at the time of the plaintiff's accident in 1991.[6] General Statutes § 55-3 provides that "[n]o provision of the general statutes, not previously contained in the statutes of the state, which imposes any new obligation on any person or corporation, shall be construed to have a retrospective effect." " 'The "obligations" referred to in the statute are those of substantive law'; Nagle v. Wood, 178 Conn. 180, 186, 423 A.2d 875 (1979); and '[l]egislation which limits or increases statutory liability has generally been held to be substantive in nature.' Little v. Ives, 158 Conn. 452, 457, 262 A.2d 174 (1969). '[W]e have uniformly interpre-

---

[5] The court determined that the school district and school board had a sufficient unity of interest with the defendants that their interests would be sufficiently covered by the peremptory challenges exercised by the individual defendants. The plaintiff's four peremptory challenges consisted of the three allowed by § 51-241 and the one allowed by General Statutes § 51-243 (a), which provides for additional peremptory challenges where alternate jurors are to be chosen. The defendants each received three challenges under § 51-241. One additional challenge to share among the defendants was allowed pursuant to § 51-243 (a), which provides in relevant part that "[i]n any case when the court directs the selection of alternate jurors, each party may peremptorily challenge four jurors. Where the court determines a unity of interest exists, several plaintiffs or several defendants may be considered as a single party for the purpose of making challenges, or the court may allow additional peremptory challenges and permit them to be exercised separately or jointly. . . ."

[6] At the time of the plaintiff's accident, General Statutes (Rev. to 1991) § 51-241 provided: "On the trial of any civil action to a jury, each party may challenge peremptorily three jurors." This language was amended in 1993 by Public Acts 1993, No. 93-176, by the addition of two sentences. See footnote 3.

ted § 55-3 as a rule of presumed legislative intent that statutes affecting substantive rights shall apply prospectively only.' *Darak* v. *Darak*, 210 Conn. 462, 467, 556 A.2d 145 (1989); *Westport* v. *State*, 204 Conn. 212, 219, 527 A.2d 1177 (1987). 'The legislature only rebuts this presumption when it "clearly and unequivocally" expresses its intent that the legislation shall apply retrospectively.' *Darak* v. *Darak*, supra, 468; see also *State* v. *Lizotte*, 200 Conn. 734, 741, 517 A.2d 610 (1986)." *Gormley* v. *State Employees Retirement Commission*, 216 Conn. 523, 529, 582 A.2d 764 (1990). This "rule is not applied, however, to legislation which is general in its terms and affects only matters of procedure"; *Schurgast* v. *Schumann*, 156 Conn. 471, 487, 242 A.2d 695 (1968); "and does not impose new obligations or affect the substantive rights of the parties." *Toletti* v. *Bidizcki*, 118 Conn. 531, 536, 173 A. 223 (1934).

Because an examination of § 51-241 and the legislative history of Public Acts 1993, No. 93-176 (P.A. 93-176) is not dispositive of the legislative intent regarding whether the statute should be applied prospectively or retrospectively, we must turn to an analysis of the procedural versus the substantive nature of the statute.

We construe the amendment to § 51-241 to be procedural rather than substantive in nature. The amendment to the statute does not affect parties' rights relative to peremptory challenges. Peremptory challenges are guaranteed by the constitution of Connecticut, article first, § 19, as amended by amendment IV, but their precise number is established by statute.[7] The statute does

---

[7] The defendants, in their appeal brief, challenge the constitutionality of the amendment to § 51-241. This claim is not reviewable for two reasons. First, the defendants never raised the issue of the constitutionality of § 51-241 at trial, and an issue that was not raised at trial, including a constitutional challenge to a statute, cannot, in general, be raised on appeal. *State* v. *Murray*, 28 Conn. App. 548, 552, 611 A.2d 916 (1992), appeal dismissed, 225 Conn. 524, 624 A. 2d 377 (1993) (certification improvidently granted). Second, "a party cannot seek the relief provided in an ordinance or statute and later

not change the number of allowable challenges each party has but allows the court to determine whether the parties share a "unity of interest," and if so, gives the court discretion to treat such parties as one. The statute also defines a unity of interest as being an interest that is substantially similar.

The amendment does not change the substantive rights of the parties. Even before § 51-241 was enacted in 1949, and when that statute consisted of only one sentence (until 1993), the number of peremptory challenges given to each party was discussed in terms of whether the parties had separate and distinct causes of action or had a similarity of position. See *Krause* v. *Almor Homes, Inc.*, 147 Conn. 333, 335–36, 160 A.2d 753 (1960); *Reid* v. *New Haven*, 133 Conn. 446, 448–49, 52 A.2d 140 (1947). The amendment did not affect a substantive right, and, therefore, we conclude that the present form of the statute governs this case.

B

The plaintiff claims that the trial court abused its discretion when it denied the plaintiff's motion in limine that sought a finding of a unity of interest among the individual defendants. To demonstrate the defendants' unity of interest, the plaintiff cites the following: "(1) Identical allegations of negligence were asserted against the defendants in a one-count complaint; (2) The defendants had the same counsel before and at trial; (3) They filed the same answer to the complaint; (4) They asserted the same special defenses; (5) They were insured by the same insurance carrier under the same policy; (6) The institutional defendants agreed to

in the same proceeding raise the question of its constitutionality . . . ." (Citations omitted; internal quotation marks omitted.) *Society for Savings* v. *Chestnut Estates, Inc.*, 176 Conn. 563, 567, 409 A.2d 1020 (1979). Here, where the defendants benefit from § 51-241, they may not challenge its constitutionality.

indemnify the individual defendants from any adverse verdict; and (7) The individual defendants conceded that they had no conflict with each other."[8]

We are aware of only one case in which, as dicta, it was stated that each party in an action was entitled to a set of peremptory challenges, without any discussion as to the relationship between the particular parties. *Mourison* v. *Hansen*, 128 Conn. 62, 67, 20 A.2d 84 (1941). The *Mourison* court noted, however, that generally, the number of peremptory challenges allowed in other jurisdictions depended on whether the interests of the parties were diverse or antagonistic. Id. Prior to the 1993 amendment to § 51-241, cases discussed whether a set of peremptory challenges should be allowed to particular parties in terms of whether they had a substantial interest in the case, had filed separate pleadings, could have brought separate actions, had an antagonistic position vis-a-vis other parties, would participate in the trial, and if they could recover or be exonerated from paying a similar amount as other parties. *Krause* v. *Almor Homes, Inc.*, supra, 147 Conn. 335–36; *Reid* v. *New Haven*, supra, 133 Conn. 448–49; *Mourison* v. *Hansen*, supra, 67; *Commercial Union Insurance Co.* v. *Frank Perrotti & Sons, Inc.*, 20 Conn. App. 253, 261–62, 566 A.2d 431 (1989).

This is a case of first impression because an interpretation of the phrase "unity of interest" in § 51-241 has not yet been determined by a Connecticut appellate tribunal. The legislative history of P.A. 93-176 demonstrates that the decision of whether parties share a "unity of interest" lies in the trial court's discretion. See 36 H.R. Proc., Pt. 16, 1993 Sess., p. 5562, remarks of Rep. Dale E. Radcliffe and Rep. Alex Knopp.

---

[8] In her brief, the plaintiff set forth further evidence that arose during the trial in support of her argument that the defendants shared a unity of interest. Because this evidence was not before the trial court during the motion in limine, we will not consider it in our decision.

Section 51-241 provides that " 'unity of interest' means that the interests of the several plaintiffs or of the several defendants are substantially similar." One commentator notes that the "substantial similarity test is not borrowed from any other jurisdiction and is necessarily difficult to define." J. Steigelfest, "The Unity of Interest Rule and Peremptory Challenges in Connecticut," 69 Conn. B.J. 353, 356 (1995). The legislative history of P.A. 93-176 provides the following examples of circumstances in which the parties may demonstrate substantially similar interests: "the interest of an agent and princip[al], when agency is not denied"; 36 H.R. Proc., supra, p. 5558; "[t]he interest of car driver and car owner when permission to use the car is not in dispute"; id., p. 5558; where multiple plaintiffs were passengers injured in the same motor vehicle accident; id., p. 5559; in an instance of respondeat superior where the employer is liable for the employee's negligent activities. Id., p. 5560. The legislative history, in addition, contains a discussion of whether there is a unity of interest among defendants in a medical malpractice action, which indicates that where there are separate issues of liability for the hospital and the medical professionals involved, there is no unity of interest. Id., pp. 5561–62.

The fact that the plaintiff's complaint states the same counts of negligence against each defendant is not dispositive. In her complaint, the plaintiff alleges that the three defendants were negligent in failing to remedy the icy condition, to warn of that condition, and to place barricades around the icy sidewalk. The duty of each individual defendant toward remedying this alleged condition is distinct. The jury might determine that the parties in supervisory positions failed to delegate the duty to clear the sidewalks properly or to implement a proper policy. The jury might determine that the person assigned to clear the sidewalks was negligent. The jury

might determine that each party was negligent, but each in a *separate and distinct manner*, or that one individual defendant's role was ministerial, whereas another defendant's role was discretionary. The liability of each, therefore, could differ.

The plaintiff claims that the fact that the defendants shared an attorney, filed the same answer to the complaint, and asserted the same special defenses creates a unity of interest among them. The plaintiff asserts that in order for one attorney to represent all three defendants, the defendants must share a unity of interest or the attorney is violating rule 1.7, of the Rules of Professional Conduct entitled "Conflict of Interest: General Rule." The plaintiff, however, has no standing to argue that the defendants' counsel violated rule 1.7, and, furthermore, the fact that parties may not have a unity of interest does not necessarily constitute a violation of the rule.

The special defenses each defendant filed are not dispositive of whether a unity of interest exists among the defendants. One defense, comparative negligence, relates solely to the plaintiff's conduct; another, governmental immunity, is a defense each defendant shares in a different capacity as a governmental employee; the third special defense, that the Workers' Compensation Act bars recovery, relates to the plaintiff's status as an employee, and not to the status of each defendant. Nor is the filing of a single answer by all three defendants dispositive of a substantial similarity of interest where the complaint recognized the different role of each defendant in the alleged negligence.

During argument on the motion in limine, counsel for the defendant did assert that the defendants' conflict was not with each other, but he went on to state, however, that "[t]he conflict arises in terms of what their different interest[s are] or in defending themselves

against the claims of the plaintiff. . . . [S]ome may just claim a lack of negligence and compare to negligence on the part of the plaintiff. . . ."

In sum, the trial court had sufficient evidence to hold that the individual defendants shared no unity of interest with each other. Consequently, the trial court did not abuse its discretion by ruling that each individual defendant should have three peremptory challenges.

## II

The plaintiff next claims that the trial court improperly accepted the jury's verdict in favor of the defendant on the ground that the defendant was governmentally immune from liability. Specifically, the plaintiff claims that the jury had insufficient evidence to find that the duties of the defendant were discretionary because the duties were ministerial acts for which no governmental immunity exists.

"A trial court's discretion is limited when setting aside a jury verdict. Paramount is the basic principle that it must not usurp the factfinding function of the jury. It is well established law that, where a jury trial is elected, [l]itigants have a constitutional right to have issues of fact decided by the jury . . . . Further, [t]he conclusion of a jury on issues of fact, if it is one at which honest [persons] acting fairly and intelligently could arrive reasonably, must stand . . . . The trial judge is, therefore, limited to determining whether there is any evidence to support the verdict. . . ." (Citations omitted; internal quotation marks omitted.) *Lemonious* v. *Burns*, 23 Conn. App. 735, 738–39, 583 A.2d 1328, cert denied, 218 Conn. 903, 588 A.2d 1078 (1991). Appellate courts should give great weight to the trial court's refusal to set aside the verdict and indulge reasonable presumptions in favor of the trial court's correctness. *Herb* v. *Kerr*, 190 Conn. 136, 139, 459 A.2d 521 (1983).

"The doctrines that determine the tort liability of municipal employees are well established. Although municipalities are generally immune from liability in tort, municipal employees historically were personally liable for their own tortious conduct. *Evon* v. *Andrews*, 211 Conn. 501, 505, 559 A.2d 1131 (1989); *Gordon* v. *Bridgeport Housing Authority*, 208 Conn. 161, 165, 544 A.2d 1185 (1988)." *Burns* v. *Board of Education*, 228 Conn. 640, 645, 638 A.2d 1 (1994). " '[A] municipal employee . . . has a qualified immunity in the performance of a governmental duty, but he may be liable if he misperforms a ministerial act, as opposed to a discretionary act. . . . The word "ministerial" "refers to a duty which is to be performed in a prescribed manner without the exercise of judgment or discretion." . . .' " (Citation omitted.) *Evon* v. *Andrews*, supra, 505.

The determination of whether official acts or omissions are ministerial or discretionary is a question of fact for the fact finder. *Gordon* v. *Bridgeport Housing Authority*, supra, 208 Conn. 165. It is the plaintiff's contention that the record clearly shows that Baker had established an "automatic and mandatory" procedure that if freezing rain or precipitation fell before a school day, Baker would call in the head custodian for Coginchaug High School two hours early in order to salt and sand icy sidewalks. The plaintiff further claims that it is undisputed that Baker did not follow this procedure and, thereby, was negligent in not following a ministerial procedure.

The plaintiff relies on the case of *Kolaniak* v. *Board of Education*, 28 Conn. App. 277, 610 A.2d 193 (1992), as precedent that the duty to clear ice and snow is ministerial rather than discretionary. In *Kolaniak*, an adult education student slipped and fell on an icy patch on a walkway of a high school classroom building. The board of education, before winter began, had issued a

bulletin to all custodians and maintenance personnel in the city indicating a policy of inspecting and keeping the walkways clear on a daily basis. The maintenance workers in *Kolaniak* could not recall putting down salt or sand on the date of the plaintiff's injury and thereby violated the directive. We held that the trial court had not improperly refused to charge on the doctrine of governmental immunity because the bulletin made the function ministerial. *Kolaniak* v. *Board of Education*, supra, 280–81.

The present case may be distinguished from *Kolaniak* because no similar directive existed that would have created a policy for removing snow or putting salt or sand on icy patches. The plaintiff relies on the defendant's testimony indicating that he called in extra personnel during the night in the event of freezing rain or snow. The jury could have reasonably believed that the defendant as a course of custom would call for additional help, but that it was not a mandatory procedure. The totality of the evidence demonstrates that the defendant had considerable discretion as to whether any additional maintenance workers would be called, who would be called, and when such calls would be made. The trial court in its memorandum of decision reviewed the evidence that denied the plaintiff's motion to set aside the verdict and cited evidence that supported the jury's verdict for the defendant. The court noted that there was evidence that he was in charge of overseeing five buildings in three locations, that he supervised custodians and established policies and procedures for snow removal and sanding, that he was responsible for staffing and determining overtime, that the board of education did *not* prescribe the manner in which he carried out his duties, and that he alone prescribed the general policy as to when the custodians should begin the work of snow removal and sanding.

We agree with the trial court in its refusal to set aside the verdict.

The judgment is affirmed.

In this opinion the other judges concurred.