[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case involves a claim by the plaintiff, Shirley Boykin Fuller, for compensation for personal injuries resulting from a fall on a stairway located at the South Norwalk railroad station on August 20, 1992. The plaintiff filed a one count complaint, dated March 9, 1993, against the defendant, city of Norwalk. The plaintiff alleges that the defendant was negligent in several respects, including that it failed to provide a safe stairway, that it failed to warn against the unsafe condition of the stairway, that it knew the step was broken and uneven, that it failed to apply friction tape on the steps, and that it failed to provide handrails on the stairway. The defendant filed an answer denying the material allegations of the complaint and a special defense of governmental immunity.
This case was referred to Attorney William A. Phillips, an attorney trial referee, in accordance with General Statutes § 52-434 (a) and Practice Book § 428 et seq. The referee conducted a trial and then filed his report containing the CT Page 5284-WWWWWWW following pertinent findings of fact: (1) that the plaintiff was injured while descending a stairway from the west-bound railway platform after disembarking from a train when her foot "hooked" on a step where the tile had become dislodged, and "the face of the step gave way under her then weight bearing foot;" (2) that a chip from the corner of the step was later discovered lying on a lower step; (3) that the plaintiff worked at the Norwalk Hospital on the day of her injury, but did sustain swelling and discomfort in her left ankle; (4) that x-rays taken after the fall did not reveal any fractures or dislocations; (5) that after the accident, the plaintiff missed seven days of work during the remainder of 1992; (6) that prior to the August, 1992, accident the plaintiff had a disk excision in March of that year, and a hysterectomy in the spring of 1993, and a L-5, S-1 fusion in January, 1994; (7) that the plaintiff's treating orthopedist gave her a 20% permanent partial disability of her lumbar spine resulting from the disk herniation; (8) that her fall in August, 1992, exacerbated her lumbar problems, adversely impacting her life style and ability to do household work; (9) that the plaintiff had incurred medical bills in the amount of $2,386 as a result of the fall in question; (10) that the railway station was owned and operated by the defendant city, which was responsible for its maintenance and repair pursuant to a deed from Penn Central in 1975; (11) that the defendant should have known of the condition of the stair tiles because they had previously become loose and had been patched with cement; (12) that Metro-North received all the income from all operations in the station, including advertising, lockers, etc., and the defendant did not derive any profit or financial benefits therefrom; (13) that the defendant's custodian did not notice any problems with the stairway prior to the plaintiff's fall; (14) that the defendant had not received any complaints from the public concerning missing or defective stairway tiles prior to the incident in question; (15) that the defendant's duty of maintaining a safe station "was ministerial and not discretionary"; and (16) that the plaintiff had not sustained her claim of lost wages because the days she missed from work were more consistent with her gynecological problems.
The attorney trial referee concluded on the basis of the above findings of fact that: (1) the defendant had a duty to use reasonable care to maintain the station for anticipated usage and to guard persons, such as the plaintiff, from injury due to "reasonably discoverable defects"; (2) the defendant had constructive notice of loose tiles on the stairway and should CT Page 5284-XXXXXXX have corrected the condition; (3) in maintaining the station, the defendant was performing a "governmental" function; (4) the defendant had not proved its special defense of governmental immunity; and (5) a recommended award of $20,000 would adequately compensate the plaintiff for the injuries she received as a result of her fall at the defendant's railway station.
Both the plaintiff and the defendant, pursuant to Practice Book § 438, moved to correct the report. The plaintiff sought corrections, among others, to reflect that: (1) her fall of August, 1992 exacerbated prior lumbar difficulties including a laminectomy in March, 1992; (2) the plaintiff lost time from work, in the approximate amount of $20,000, because of her fall; (3) in November, 1994, the plaintiff's orthopedist gave a rating of 25% permanent partial disability of the lumbar spine; (4) the plaintiff submitted without objection medical bills of approximately $30,000, all arising from the August, 1992, fall; and (5) in addition to compensation for medical bills and lost wages, the plaintiff should be awarded $200,000 for non-economic damages.
In response to the motion to correct filed by the plaintiff, the attorney trial referee declined to make any changes in his report or recommendation that judgment enter for the plaintiff on the complaint in the amount indicated. Specifically, the referee refused to agree with the plaintiff that her present medical conditions were primarily attributable to the fall, rather than to pre-existing and post-accident lumbar problems, including a laminectomy several months before the accident and a spinal fusion thereafter. The referee also disagreed with the contention that all of the plaintiff's medical bills incurred through July, 1995, were attributable to the accident in question, and that the plaintiff had sustained a significant loss of wages.
The defendant also moved that the referee's report be corrected to reflect that: (1) the plaintiff was contributorily negligent; (2) there was no evidence that the stair tiles were not firmly bonded to the underlying concrete step; and (3) a hazardous condition did not exist at the defendant's railway station.
In response to this motion to correct, the referee stated that: (1) contributory negligence on the part of the plaintiff was neither alleged nor proved; (2) numerous stair tiles had become loose and that the plaintiff had hooked her foot on a CT Page 5284-YYYYYYY particular chip that had broken loose; (3) the condition of the stairs did constitute a hazardous condition, the defendant city was on notice thereof, and had attempted to repair the condition in the past.
Both the plaintiff and the defendant filed exceptions to the referee's report pursuant to Practice Book § 439, which repeat the claims set forth in their respective motions to correct.
As to this court's scope of review of an attorney trial referee's report regarding the facts of a given case, the Supreme Court reiterated just last week in Elgar v. Elgar, 238 Conn. 839,848-49, ___ A.2d ___ (1996), that "[a] reviewing authority may not substitute its findings for those of the trier of the facts. This principle applies no matter whether the reviewing authority is the Supreme Court . . . the Appellate Court . . . or the Superior Court reviewing the findings of . . . attorney trial referees. See Practice Book § 443 . . . The factual findings of a [trial referee] on any issue are reversible only if they are clearly erroneous . . . [A reviewing court] cannot retry the facts or pass upon the credibility of the witnesses . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citations omitted; internal quotation marks omitted.)
Again, according to Elgar v. Elgar, supra, 238 Conn. 845, this court has two tasks to perform in reviewing an attorney trial referee's report. The first is to determine whether the "referee's findings of fact were supported by the evidence," and, in addition, whether "[t]he conclusions drawn therefrom were legally and logically correct."
As to the first task of determining whether there is support in the record for the factual findings of the referee, it is noted that this case was tried over the course of three days on October 31, 1995, January 24, 1996, and February 7, 1996. However, only the transcript for the last day of trial was filed. On that day, Dominick M. DiGangi, the city's director of public works, testified, and clearly the referee's findings based on his testimony can be evaluated to determine whether any such findings are supported by the record. In addition, the plaintiff was recalled to the stand by the defendant and was questioned solely about her application to her employer for disability insurance. CT Page 5284-ZZZZZZZ With these two exceptions, it is impossible for the court to ascertain whether there is support in the record for the referee's findings of fact because of a lack of a transcript of the trial testimony for the first two of the three days of trial. Except as noted, the referee's report must be viewed as if no exceptions had been filed, which in turn means that the referee's findings of fact must stand uncorrected and may not be disturbed. A failure to file valid exceptions constitutes in effect a waiver of the "right to attack the subordinate factual findings contained in the report." Bernard v. Gershman, 18 Conn. App. 652,655, 559 A.2d 1171 (1989). When a trial transcript is not furnished to the court, it can be assumed that such a transcript is not "crucial" to the evaluation of the referee's report.Beizer v. Goepfert, 28 Conn. App. 693, 706-07, 613 A.2d 1336, cert. denied, 224 Conn. 901, 615 A.2d 1049 (1992), cert. denied, ___ U.S. ___, 113 S.Ct. 1416, 122 L.Ed.2d 786 (1993).
In addition to the transcript of one day of trial, a number of exhibits were admitted into evidence, and thus the referee's factual findings may be tested against these exhibits as well as the one day of testimony. Based on those sources, it is clear that there is ample support for the referee's findings of fact. For example, as to notice of the defect, the plaintiff submitted as an exhibit a memo to Mr. DiGangi dated March 13, 1992, advising him that "[t]iles are broken leading from steps in station to the outside platform. There are four (4) broken tiles that constitute a tripping hazard. Should be placed on top priority for repair — liability." Regarding the nature of the defendant's obligations at the station, Mr. DiGangi agreed that it was to make the station "safe for pedestrians." He added that "when tiles were missing, concrete had been put in its place, mortar." He also confirmed that the defendant did not make any profit from either the station or an adjacent commuter parking lot.
Regarding the extent of the plaintiff's injuries and the amount of her medical bills and lost wages, the exhibits indicate that while the plaintiff did submit medical bills of $30,000, $20,000 of that amount represented charges from the Norwalk Hospital, including $17,000 in January, 1994, when the plaintiff had a spinal fusion. As to the claim of lost wages in the amount of $22,000, $19,000 of that amount was for the 40 weeks from October, 1993 to August, 1994. The plaintiff, according to an exhibit, missed only 14 days after the date of accident for the next seven months. Thus, the referee's findings as to medical CT Page 5284-AAAAAAAA bills and lost wages find support in the exhibits submitted at trial. Thus, the referee's recommendation of $20,000 is not unreasonable and illogical in view of the factual findings regarding the amount of special damages.
The defendant also filed objections to the acceptance of the referee's report in accordance with Practice Book § 440, but the plaintiff did not file any such objections. This means that the plaintiff has waived any right to claim that the referee's conclusions were not properly reached on the basis of the subordinate facts that were found, or that there were errors in rulings on the admission of evidence or in other rulings.Rostenberg-Doern Co. v. Weiner, 17 Conn. App. 294, 301-02,552 A.2d 827 (1989). In Rostenberg-Doern, where the plaintiff did not file objections to the referee's report, the court said the failure to "follow the appropriate procedural guidelines" resulted in it being "precluded from reviewing [plaintiff's] claim." Id., 302.
The objections to the report filed by the defendant relate to the determination by the referee that the stairway constituted a hazardous condition of which the defendant either knew, or should have known. The defendant argues that it had no notice, actual or constructive, of the particular defect or dangerous condition. Although the defendant agrees that it had a duty to keep the premises "reasonably safe," it repeats its contention that there was no breach of that duty. Furthermore, the defendant argues that maintaining the station in a reasonably safe condition is not a "ministerial" duty as characterized by the referee, but is rather a "discretionary" obligation involving decisions regarding the amount of maintenance and repair expenditures and what will be done and when.
The main issue in this case is the claim by the defendant of governmental immunity in connection with its maintaining and repairing the railway station at South Norwalk. The starting point is General Statutes § 52-557n(a)(1)(A) and (B), which abrogates governmental immunity for a municipality provided the injuries or damage were caused by the negligence of an employee acting within the scope of his employment, or if the municipality derives a "special corporate profit or pecuniary benefit." However, as to liability based on negligence, subsection (a)(2)(B) provides that a municipality shall not be liable if the negligent act or omission requires "the exercise of judgment or discretion." CT Page 5284-BBBBBBBB
The referee found as a fact that the maintenance and repair of the station was a ministerial function and this is a factual finding not to be disturbed by this court. Gauvin v. New Haven,187 Conn. 180, 186, 445 A.2d 1 (1982); Beach v. Regional SchoolDistrict Number 13, 42 Conn. App. 542, 553, ___ A.2d ___ (1996).
Even if characterizing maintenance and repair as ministerial rather than discretionary constituted a conclusion more than a factual finding on the part of the referee, such conclusion would not be illogical or unlawful. See Kolaniak v. Board of Education,28 Conn. App. 277, 281, 610 A.2d 193 (1992), which involved a fall on snow and ice, and whether maintenance of the sidewalk was a discretionary or ministerial function. "A determination as to when to clear a sidewalk, however, is not a discretionary function. Every voluntary physical act necessarily requires some sort of preceding thought process and decision by the actor. . . . We will not equate the act of clearing snow and ice by maintenance workers, in accordance with a directive by the policymaking board of education, with the policy decisions that are usually afforded protection by the doctrine of governmental immunity."
This case was distinguished in Beach v. Regional SchoolDistrict Number 13, supra, 42 Conn. App. 553-54, which held that the defendant, the supervisor of buildings and grounds, had not been given a bulletin containing a directive regarding removal of snow and ice, as had occurred in Kolaniak. The court pointed out in Beach that no similar directive was given to the defendant, who therefore had "considerable discretion." Id., 554.
In the present case, the custodian's duties were set forth in a "position description" which indicated that he was to perform minor maintenance duties in order to keep the station "in clean, orderly and functional condition." Moreover, the custodian at the station was to perform his job "according to standard procedure and by building's operational schedule." It seems apparent that the custodian's duties in this case are more akin to those of the employee in Kolaniak than in Beach. Under the defendant's theory, it could never be liable for any mishap at the railroad station, despite its agreement that it had the obligation to keep the premises reasonably safe, because of the discretionary nature of its duties.
Thus, maintaining and repairing broken tiles on a stairway CT Page 5284-CCCCCCCC does not appear to be a discretionary task, but rather if there is such a problem, the maintenance people are obliged to proceed to fix whatever needs fixing. Maintenance and repair of drains and sewers was deemed to be ministerial in nature in Spitzer v.Waterbury, 113 Conn. 84, 88, 154 A. 157 (1931).
An example of a policy making or discretionary decision for which a policy maker was not held liable is found in Heigl v.Board of Education, 218 Conn. 1, 6-8, 587 A.2d 423 (1991), where a decision by the board of education to permit high school students to leave the school campus during school hours did not subject the policy maker to liability to a student who was injured as a result of a motor vehicle accident occurring during this time period. See also Gordon v. Bridgeport HousingAuthority, 208 Conn. 161, 180, 544 A.2d 1185 (1988), concerning the deployment of police officers.
Even if maintenance and repair at the railway station was considered to be a discretionary duty, there is another theory on which the defendant could be held liable to the plaintiff.[1] A municipality can be logically held to be performing a proprietary function in the operation of a railway station. The attorney trial referee, of course, concluded that the defendant was performing a governmental function, but it is well recognized that a court is not bound by a referee's conclusions as to legal matters. Dills v. Enfield, 210 Conn. 705, 713, 557 A.2d 517
(1989). See also State Bank of Westchester v. New Dimension Homesof Connecticut, Inc., 38 Conn. App. 491, 497, 661 A.2d 119
(1995) ("[a]ny legal conclusions reached by an attorney trial referee have no conclusive effect.")
In Tarzia v. Stamford Transit District, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 076893 (February 28, 1989, Lewis, J., 4 CSCR 302), this court ruled that the operation of a railway station was a proprietary function even thought the municipality was not making any money from such operation. The court quoted 18 McQuillin, Municipal Corporations (3rd Ed.) §§ 53.30, 53.30a and 53.32, for the author's opinion that the operation of garages, utilities and parking constituted proprietary functions. McQuillin also referred to a third category where the functions were of a mixed or dual nature, where claims of immunity are also foreclosed. Reference was also made in the Tarzia decision to other states which had ruled that the operation of an airport and a wharf constituted proprietary functions. CT Page 5284-DDDDDDDD
Accordingly, maintenance and repair of the railway station were ministerial functions as found by the referee, or alternatively, proprietary functions as discussed in Tarzia,
supra, and therefore as to the plaintiff's complaint, judgment is entered in accordance with the recommendation of the referee in favor of the plaintiff in the amount of $20,000. Statutory costs shall be taxed by the clerk.
So Ordered.
Dated at Stamford, Connecticut, this 20th day of August, 1996.
William B. Lewis, Judge