[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Memorandum Filed June 10, 1997
On June 14, 1995, the plaintiff, Keith Ambrose, filed a three count amended complaint against the defendants, Anthony Singe, individually and as Danbury's superintendent of schools, Sarah Woods, individually and as assistant principal of the Danbury High School, Herbert Hintze, individually and as acting principal of the Danbury High School, the Danbury Board of Education and the city of Danbury. In the first count, the plaintiff alleges that in May, 1993, he was a senior at Danbury High School, that between April 29, 1993 and May 5, 1993, he was intimidated and threatened by Anthony Wright, another student at Danbury High School, and that on May 5, 1993, while he was in class, Anthony Wright slashed him with a sharp object. The plaintiff further alleges that the defendants, excluding the city of Danbury, were negligent in that they, inter alia, failed to hold Anthony Wright accountable for threats made to the plaintiff, failed to ward off the impending attack against the plaintiff, and failed to follow policy and procedure for disciplining Anthony Wright for both the threats and the ultimate attack.
In the second count, the plaintiff seeks to hold the city of Danbury, through its Board of Education, liable under General Statutes § 10-235. In the third count, the plaintiff alleges that, as employer of the defendants, Woods, Hintze and Singe, and as political subdivision of the state of Connecticut, the city of Danbury is liable under General Statutes § 7-465. CT Page 7131
On January 21, 1997, the defendants filed a motion for summary judgment on the grounds that they are entitled to governmental immunity, that the plaintiff is not entitled to assert General Statutes § 10-235 "because there is presently no claim to indemnify" and that the plaintiff has not complied with the six-month notice provision of General Statutes §7-465. In support of this motion, the defendants filed a memorandum of law accompanied by affidavits by the town clerk of Danbury, by the chairperson of the Danbury Board of Education, and by defendants Woods, Hintze and Singe.
On February 7 and 10, 1997, the plaintiff filed an objection to the defendants' motion, an opposing memorandum of law and affidavits by the plaintiff and his girlfriend, Karin Tyrian. The plaintiff also submitted, as exhibit A, a document entitled "Danbury High School Student and Parent Handbook, 1992-1993," which lists sanctions for various student infractions. For "[t]hreatening, harassing, and/or use of racial slurs," the disciplinary action listed is "3 day OSS plus referral to Crisis Counselor" where "OSS is the abbreviated term for `Out-of-School Suspension.'"
"Practice Book § 384 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Internal quotation marks omitted.) Doty v.Mucci, 238 Conn. 800, 805, 679 A.2d 945 (1996). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party . . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citations omitted; internal quotation marks omitted.) Id.,
805-06.
A. GOVERNMENTAL IMMUNITY
"The doctrines that determine the tort liability of municipal employees are well established. Although municipalities are generally immune from liability in tort, municipal employees CT Page 7132 historically were personally liable for their own tortious conduct." Burns v. Board of Education, 228 Conn. 640, 645,638 A.2d 1 (1994). Nevertheless, "a municipal employee . . . has a qualified immunity in the performance of a governmental duty, but he may be liable if he misperforms a ministerial act, as opposed to a discretionary act. . . . The word "ministerial" refers to a duty which is to be performed in a prescribed manner without the exercise of judgment or discretion. . . ." (Internal quotation marks omitted.) Id.
In their memorandum of law, the defendants argue that they are entitled to governmental immunity because the acts of formulating, implementing and enforcing school disciplinary rules are discretionary. In response, the plaintiff argues that there is a genuine issue of material fact as to whether the defendants' actions were ministerial or discretionary, and even if they were discretionary, that an exception to governmental immunity applies because it was apparent that the defendants' failure to act would be likely to subject an identifiable person to imminent harm.
In general, "[t]he determination of whether official acts or omissions are ministerial or discretionary is a question of fact for the fact finder." Beach v. Regional School District Number13, 42 Conn. App. 542, 553, 682 A.2d 118 (1996). While some cases have reached the issue as a question of law, "[t]he crucial distinguishing factor is that the duty of the municipality [must be] unquestioned under the facts pleaded" for the issue to be one of fact. Gordon v. Bridgeport Housing Authority, 208 Conn. 161,180-81, 544 A.2d 1185 (1988).
In the present action, the fact that the defendants owed a duty of care to the plaintiff is not in issue. The defendants are the assistant principal, acting principal, superintendent and Board of Education for Danbury. The plaintiff is a student attending Danbury High School. "[S]tatutory and constitutional mandates demonstrate that school children attending public schools during school hours are intended to be the beneficiaries of certain duties of care." Burns v. Board of Education, supra,228 Conn. 648. "The result of this network of statutory and constitutional provisions is that the superintendent of schools bears the responsibility for failing to act to prevent the risk of imminent harm to school children as an identifiable class of beneficiaries of his statutory duty of care. At least during school hours on school days, when parents are statutorily compelled to relinquish protective custody of their children to a CT Page 7133 school board and its employees, the superintendent has the duty to protect the pupils in the board's custody from dangers that may reasonably be anticipated." Id., 649. By analogy, the board and its other employees also owe such a duty to a student, such as the plaintiff, who was on school grounds during a school day at the time of the alleged injury.
Because there is a duty owed by the defendants to the plaintiff, the question of whether the defendants' actions were ministerial or discretionary is one of fact not properly addressed on a motion for summary judgment. Specifically, the fact that the "Danbury High School Student and Parent Handbook, 1992-1993" lays out specific penalties for specific student infractions gives rise to the question of how much discretion school officials actually have in applying those policies. SeeKolaniak v. Board of Education, 28 Conn. App. 277, 281-82,610 A.2d 193 (1992) (board of education bulletin to custodians to keep walkways clear of ice and snow made the omission by those custodians ministerial as a matter of law). This question is heightened by the fact that the defendant Board of Education is statutorily required to make such policies.[1] General Statutes § 10-233e.
Even if the defendants' actions or omissions were categorized as discretionary, however, the factual situation of the present action fits within one of the exceptions to governmental immunity. "Our cases recognize three such exceptions: first, where the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm . . . second, where a statute specifically provides for a cause of action against a municipality or municipal official for failure to enforce certain laws . . . and third, where the alleged acts involve malice, wantonness or intent to injure, rather than negligence." (Citations omitted; internal quotation marks omitted.) Burns v.Board of Education, supra, 228 Conn. 645.
The only exception that is of relevance to the present action, and the only one the plaintiff argues, is the exception permitting a tort action in circumstances of perceptible imminent harm to an identifiable person. The Supreme Court has "construed this exception to apply not only to identifiable individuals but also to narrowly defined identified classes of foreseeable victims." Burns v. Board of Education, supra, 228 Conn. 646. CT Page 7134
The plaintiff argues that the defendants had actual notice that Anthony Wright was threatening the plaintiff during the week immediately preceding the alleged attack. In his affidavit, the plaintiff states that on April 29, 1993, Anthony Wright shouted at him and at his girlfriend, Karin Tyrian, and then "rushed at me and got in my face." The plaintiff alleges that three teachers intervened and that Anthony Wright was thereafter taken to the office. The plaintiff also alleges that on May 4, 1993, Anthony Wright again began yelling at the plaintiff and Karin Tyrian, and that "a number of teachers intervened and one had to physically restrain Anthony Wright." The plaintiff states that one of the teachers present was the defendant, acting principal Hintze. The plaintiff also attests that, on May 5, 1993, Hintze personally spoke to the plaintiff and Karin Tyrian about the incident, told the two students that "he wanted to have Anthony Wright suspended for three (3) days" and "spoke to Ms. Sara Woods, Anthony Wright's `level principal' about suspending Anthony Wright."
In her affidavit, Karin Tyrian reiterates these facts and also states that, after the May 4, 1993 altercation, she "explained everything to Mr. Hintze, including Anthony Wright's unsolicited taunting and harassing which started months ago, and both recent incidents where Anthony Wright was starting altercations with Keith." Both students state that Hintze was "definitely aware" of the threat that Anthony Wright posed to the plaintiff, but did not follow the student handbook guidelines for threatening behavior.
Under these facts, the plaintiff was identifiable as an individual at risk. Moreover, because the two documented incidents of Anthony Wright threatening the plaintiff occurred the week before and the day before the alleged attack, it should have been apparent that the plaintiff was at imminent risk. As such, the present situation falls within one of the exceptions to the doctrine of governmental immunity, and the defendants' motion for summary judgment as to the first count of the amended complaint is denied.
B. GENERAL STATUTES § 10-235
The defendants argue that General Statutes § 10-235 is an indemnification statute and does not provide an injured plaintiff with a direct cause of action.[2] The plaintiff analogizes General Statutes § 10-235 to General Statutes § 7-465 and asserts that both statutes allow a direct cause of action. A CT Page 7135 split of authority over this issue exists in the Superior Courts and neither the Appellate Court nor the Supreme Court has addressed this issue directly.
In Carrington v. Sullivan, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 359778, 3 CONN. L. RPTR. 232 (January 29, 1991, Hennessey, J.), the court, quoting Plasse v. Board ofEducation, 28 Conn. Sup. 198, 201, 256 A.2d 519 (1969), held that "no direct liability runs from a board of education to a plaintiff in a tort action, and liability of such board, if any, is to reimburse such teacher or employee for judgments which might be rendered against such teacher or employee."[3]
Moreover, in Marotto v. Gaudet, Superior Court, judicial district of Hartford/New Britain at New Britain, Docket No. 450581 (December 3, 1992, Langenbach, J., 8 CONN. L. RPTR. 49, 8 CSCR 82), the court compared General Statutes § 10-235 with General Statutes § 7-465 and held that the former "gives the right of indemnification to an employee of the board of education in certain circumstances, unlike General Statutes §7-465 (a) which reads in pertinent part that `the municipality shall pay on behalf of any such employee,' which provides an injured plaintiff a direct cause of action against a municipality."[4]
General Statutes § 7-465 (a) also provides a direct cause of action to an injured plaintiff by contemplating that actions may be maintained against a municipality and its employee jointly.[5]
Since General Statutes § 10-235 contains no such language, the plaintiff's analogy between the two statutes is inapposite.
A few Superior Court cases support the plaintiff's ability to bring this action directly under § 10-235.[6] However, these cases, for the most part, gave little reasoning for their decisions. The exception was Rosen v. Reale, Superior Court, judicial district of New London at New London, Docket No. 527510 January 13, 1994, Hurley, J., 9 CSCR 176), which relied on the Appellate Court case Burns v. Board of Education, 30 Conn. App. 594,621 A.2d 1350 (1993). The Appellate decision, while related to the issue, did not directly discuss whether or not a direct cause of action would be allowed under General Statutes §10-235. Moreover, this decision was later reversed by the Supreme Court, with no further discussion of General Statutes §10-235. See Burns v. Board of Education, supra, 228 Conn. 640. In light of the greater authority and reasoning denying a direct cause of action for indemnification by an injured plaintiff under General Statutes § 10-235, the defendants' motion for summary CT Page 7136 judgment as to count two is granted.[7]
C. GENERAL STATUTES § 7-465
The defendants argue that the plaintiff has failed to comply with the six-month notice provision of General Statutes §7-465.[8] "[T]he filing of written notice in compliance with the statute is a condition precedent to the maintenance of a cause of action against the defendant town under Section 7-465 . . . and if no such notice is given . . . the municipality cannot be held jointly responsible . . . ." (Citations omitted; internal quotation marks omitted.) Romano v. City of Derby, Superior Court, judicial district of Ansonia/Milford at Milford, Docket No. 034400 (February 1, 1993, Jones, J., 8 CONN. L. RPTR. 723,8 CSCR 226). In his affidavit, Michael Seri, town clerk for the city of Danbury states that he never received notice of this claim, and the plaintiff conceded this point at oral argument. Therefore, the defendants' motion for summary judgment as to count three is granted.
STODOLINK, J.