[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Norma Vitone, alleges in her complaint filed January 24, 2000, that she was appointed administrator of the estate of John Vitone by the Waterbury probate court. She alleges that John Vitone was a patient and resident of Waterbury Convalescent Center ("WCC"), and a patient of Waterbury Hospital and its Geropsychology Center, Dr. Jeffrey CT Page 16196 Boyd, Dr. Robert Behrends and Dr. Arvind Shah[1]; all of whom are named defendants in this action. She further alleges that John Vitone committed suicide by jumping from a second level parking deck at the Waterbury Hospital Geropsychology Center of Waterbury Hospital due to the carelessness and/or negligence of the named defendants.
WCC by way of subpoena and notice of deposition dated February 15, 2001, scheduled the deposition of ambulance driver, William J. Mullahy, for March 12, 2001 at 10:00 a.m. At the deposition, Attorney Andrew O'Keefe of O'Keefe, Phelan Jackson represented WCC. Attorney Pamela Costa represented Dr. Jeffrey Boyd and Attorney William O'Donnell represented Waterbury Hospital and Waterbury Hospital Geropyschologists ("hospital defendants"). Both attorneys Costa and O'Donnell are from the law firm of Carmody Torrance. At the deposition the witness, Mullahy, was present and all parties were prepared to proceed with his deposition. Attorney O'Keefe, however, objected to both attorneys Costa and O'Donnell examining Mr. Mullahy. Attorney O'Keefe maintained that each law firm entering an appearance was entitled to have only one attorney examine a witness. He argued that the court docket showed the law firm of Carmody Torrance appearing for the hospital defendants and Boyd. Attorney O'Donnell maintained that two separate appearances were filed in this action by Carmody Torrance — one signed by Attorney Trudie Hamiltion on behalf of hospital defendants and the other by Attorney Augustus Southworth on behalf of Boyd. Attorney O'Donnell argued that Boyd on the one hand and the hospital defendants on the other retained separate counsel and, as a result, were entitled to have their individual attorneys examine the witness. He observes that a representative from Attorney O'Keefe's office had attended a previous deposition where two separate attorneys from Carmody Torrance represented their respective defendants and asked questions of the witness separately. Attorney O'Donnell maintained that he was entitled to ask questions on behalf of his clients the hospital defendants, and Attorney Costa was entitled to ask questions on behalf of her client, Dr. Jeffrey Boyd. As a result of this disagreement, the deposition was adjourned without any party having questioned Mullahy.
On March 30, 2001, WCC filed a motion for protective order and for costs requesting that the court issue an order limiting the examination of witnesses to one attorney from each firm that had entered an appearance in the action. WCC also seeks reimbursement for costs relative to the deposition (fees of the court reporter, lost wages of Mullahy, and sheriff's fee for serving the subpoena on Mullahy). On May 4, 2001, the hospital defendants filed an objection to co-defendant, WCC's motion for protective order and for costs. Defendant Boyd filed his own objection the same day. CT Page 16197
"Upon motion by a party from whom discovery is sought, and for good cause shown, the judicial authority may make any order which justice requires to protect the party from annoyance, embarrassment, oppression, or undue burden or expense. . . ." Practice Book § 13-5. The moving party "bears the burden of showing good cause why a protective order should be issued." Kowalonek v. Bryant Lane, Inc., Superior Court, judicial district of Danbury, Docket No. 324942, (April 11, 2000,Moraghan, J.). "A finding of good cause must be based on a particular factual demonstration of potential harm, not on conclusory statements."Value Computer v. Advance Computing Sol., Superior Court, judicial district of Waterbury, Docket No. 152255, (April 18, 2000, Leheny, J.).
WCC argues in its memorandum in support of its motion for protective order and for costs that good cause exists for a protective order limiting the examination of witnesses to one attorney from any single law firm. Specifically, it argues the Connecticut Rules of Practice provide that only one attorney may examine a witness and that no associate counsel is permitted to examine except by permission of the court.[2]
WCC argues that "permitting two attorneys from one firm representing numerous parties to unilaterally divide up questioning in the manner suggested by the codefendants would be prejudicial to other defendants in the action and would make discovery in the case unduly burdensome."
WCC also contends that the codefendants' position with regard to the examination of witnesses assumes that there is a conflict of interest in the firm's representation of all three defendants. Furthermore, WCC argues that no representation has been made by Carmody Torrance that the codefendants' consent has been obtained. As a result of this alleged conflict, WCC maintains that Carmody Torrance's separate representation of Boyd on one hand and the hospital defendants on the other is prohibited by rules 1.7 and 1.10 of the Professional Rules of Conduct.[3]
For this reason, WCC argues that Carmody Torrance should be disqualified from further representation in this matter.
Boyd argues in his objection to codefendant WCC's motion for protective order and for costs that he and the hospital defendants filed separate appearances, have consistently filed separate pleadings, and have retained separate counsel at depositions. He argues that since the commencement of this action over four years ago, the hospital defendants have been represented by Attorney Hamilton or her representatives and he has been represented by Attorney Augustus Southworth or his representatives. Boyd argues that having no objection in the past, WCC should not now be permitted to raise an issue as to disqualification of counsel for Boyd and the hospital defendants.
Boyd next contends that he and the hospital defendants are separate CT Page 16198 parties and, therefore, Connecticut Practice Book § 5-4 does not apply. Boyd cites Commercial Union Ins. Co. v. Frank Perrotti and Sons,Inc., 20 Conn. App. 253, 566 A.2d 431 (1989), as stating that "[w]here there are several plaintiffs or defendants . . . each is entitled to . . . be treated as a party. . . ." Boyd points out that the Commercial court found that co-plaintiffs should be treated separately for the purposes of the number of peremptory challenges and for cross-examination. Boyd also cites Beach v. Regional School District Number 13, 42 Conn. App. 542,682 A.2d 118 (1996), for the proposition that where there are separate issues of liability for a hospital and the medical professional involved in a negligence action there is no unity of interest. Boyd contends that as separate parties, without a unity of interest, he and the hospital defendants are each entitled to conduct their own examination of witnesses.
Finally, Boyd argues that, although there is no unity of interest, there is no conflict of interest between himself and the hospital defendants. Dr. Boyd cites Beach, supra, 42 Conn. App. 542, for the proposition that a lack of unity of interest does not necessary constitute a violation of Rule 1.7. Boyd also argues that WCC does not have standing to raise the issue of an attorney's violation of the Rules of Professional Conduct.
The hospital defendants argue in their objection that WCC has (1) failed to provide any specific support for its position that counsel for both them and Boyd should not be permitted to examine deposition witnesses separately and (2) there is no actual conflict of interest among the clients represented by Carmody Torrance and, therefore, disqualification of the firm is not justified.
Specifically, the hospital defendants argue that there are no statutes, rules, regulations or cases that specifically preclude two attorneys from one law firm from representing separate defendants in a case or that preclude two attorneys from the same law firm representing separate defendants from individually examining witnesses at a deposition. The hospital defendants argue that WCC mistakenly relies on § 13-30 and § 5-4 of the Practice Book Rules. The hospital defendants argue that these sections only preclude two attorneys for the same party from separately examining a witness at deposition but do not prevent two attorneys for separate parties from separately examining a deponent. They, like Dr. Boyd, cite Commercial Union Ins. Co. v. FrankPerrotti and Sons, Inc., supra, 20 Conn. App. 262, for the proposition that where there are several plaintiffs or defendants "they should [be] treated as two separate parties for the purpose of cross-examination."
The hospital defendants, argue that WCC's reliance on § 6-15 of CT Page 16199Tait's Handbook of Connecticut Evidence is similarly misplaced. They contend that Professor Tait's statement in that section "clearly addresses situations in which two attorneys for the same party wish to question a witness at trial."
In addressing WCC's argument that Carmody Torrance's representation of the hospital defendants and Boyd presents a conflict of interest subjecting the firm to disqualification, the hospital defendants contend that their attorneys have fully complied with the requirements of Rules 1.7 and 1.10. Specifically, the hospital defendants argue that their attorneys complied with 1.7 and 1.10 by (1) determining that there would be no adverse effects on their relationship with or representation of the respective parties and (2) obtaining the parties' consent to their continued representation after apprising them of the situation.
The hospital defendants also contend that the fact that their counsel has not violated Rule 1.7 is further supported by the Connecticut Appellate Court's ruling in Beach, supra, 42 Conn. App. 542. The hospital defendants, like Boyd, point to language in the decision indicating "that where there are separate issues of liability for a hospital and medical professionals involved [in a lawsuit], there can be no unity of interest." They, like Boyd, contend that the Beach court found that the fact that parties may not have a unity of interest does not necessarily constitute a violation of Rule 1.7. Furthermore, the hospital defendants, like Boyd, point to the fact that the Beach court found that the plaintiff in that action had no standing to argue that the defendant's counsel violated Rule
1.7.
I. WCC's Standing to Argue that its Codefendants' Attorneys Have Violated the Rules of Professional Conduct.
The comments to Rule 1.7 state the following: "Resolving questions of conflict of interest is primarily the responsibility of the lawyer undertaking the representation . . . Where the conflict is such as clearly to call in question the fair or efficient administration of justice, opposing counsel may properly raise the question. Such an objection should be viewed with caution, however, for it can be misused as a technique of harassment." Rules of Professional Conduct 1.7, Comment: Conflicts Charged by an Opposing Party.
Viewing WCC's charge of conflict in a cautionary light, it does not appear that WCC is raising the issue for the purposes of delay or to harass its codefendants. "The Rules of Professional Conduct recognize the potential for conflicts in an attorney's [or one firm's] representation of CT Page 16200 co-parties because `of substantial discrepancy in the parties' testimony, incompatibility in positions in relation to an opposing party or the fact that there are substantially different possibilities of settlement of the claims or liabilities in question.'" Patchell v.Automobile Insurance Co., Superior Court, judicial district of New Haven at New Haven, Docket No. 368147, (August 30, 1995, Hartmere, J.), quoting Rules of Professional Conduct, Rule 1.7, Comment: Conflicts in Litigation. The parties dispute whether there is any incompatibility between the positions taken by Boyd and those taken by the hospital defendants. Because the rules recognize a potential for conflict under the circumstances presented in this case, WCC has properly raised the question of conflict.
II. Whether the Co-defendants Have Violated the Rules of Professional Conduct.
"The trial court has broad discretion to determine whether there exists a conflict of interest that would warrant disqualification of an attorney." Bergeron v. Mackler, 225 Conn. 391, 397, 623 A.2d 489 (1993). "Disqualification of counsel is a remedy that serves to enforce the lawyer's duty of absolute fidelity and to guard against the danger of inadvertent use of confidential information." (Internal quotation marks omitted.) Id. "Where the proposed sanction is the disqualification of counsel, the court must be especially cautious, notwithstanding any misgivings it may have regarding an attorney's ethical conduct, both because of the immediate effect disqualification has on a client by separating him from his counsel of choice, and because such motions are often interposed for tactical reasons." MMR/Wallace Power Industrial,Inc. v. Thames Associates, 764 F. Sup. 712, 718 (D.Conn. 1991). "Nevertheless, if the court concludes that the asserted course of conduct by counsel threatens to affect the integrity of the adversarial process, it should take appropriate measures, including disqualification, to eliminate such taint." Id.
The conduct of attorneys practicing in Connecticut is regulated by the Rules of Professional Conduct. Bergeron, supra, 225 Conn. 397. The specific rules at issue in this case are 1.7(b) and 1.10(a), the texts of which were set forth previously in footnote 2 at page 4. 1.7(b) governs simultaneous representation of parties whose interests in litigation may conflict, such as coplaintiffs or codefendants. Under this rule, "common representation of persons having similar interests is proper if the risk of adverse effect is minimal and the requirements of [the rule] . . . are met." Rules of Professional Conduct 1.7, Comment: Conflicts in Litigation. "An impermissible conflict may exist [however] by reason of substantial discrepancy in the parties', testimony, incompatibility in positions in relation to an opposing party or the fact CT Page 16201 that there are substantially different possibilities of settlement of the claims or liabilities in question." Id.
A review of the pleadings in this case shows no substantial discrepancy between the position taken by the hospital defendants and the position taken by Boyd. In Boyd's answer to the operative complaint, he admits that he was a physician on the staff of Waterbury Hospital but denies that he was a physician on the staff of WCC. He also denies that he was an agent acting in the interest of the hospital defendants. The hospital defendant's, in responding to the same allegations, deny the plaintiff's allegation as pled. This difference in responses, at this stage in the pleadings, does not evince a substantial discrepancy or incompatibility in positions.
Furthermore, the risk of adverse effect appears to be minimal in this case and Carmody Torrance claims to have complied with the requirements of Rule 1.7. That is, the attorneys from the firm representing Boyd and the hospital defendants argue that they determined that there would be no adverse effects on their relationship with, or representation of, the respective parties. Also, the attorneys maintain that they thoroughly discussed the issue of conflict with the parties and obtained their consent to continued representation. The comments to Rule 1.7 state that a client may consent to representation notwithstanding a conflict. "[W]hen a disinterested lawyer would conclude that the client should not agree to the representation under the circumstances [however], the lawyer cannot properly ask for such agreement or provide representation on the basis of the client's consent." Rule 1.7, Comment: Consultation and Consent. A disinterested lawyer would not necessarily conclude that Boyd and the hospital defendants should not have agreed to continued representation by Carmody Torrance. Accordingly, where the requirements of Rule 1.7 have been met, Carmody Torrance has not violated this rule.
Rule 1.10(a) prohibits any lawyer within a firm from knowingly representing a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7, 1.8(c), 1.9 or 2.2. It "gives effect to the principle of loyalty to the client as its applies to lawyers who practice in a law firm. Such situations can be considered from the premise that a firm of lawyers is essentially one lawyer for the purposes of the rules governing loyalty to the client, or from the premise that each lawyer is vicariously bound by the obligation of loyalty owed by each lawyer with whom the lawyer is associated." Rule of Professional Conduct 1.10, Comment: Principles of Imputed Disqualification. Rule 1.10(d) states that "[a] disqualification prescribed by this Rule may be waived by the affected client under the conditions stated in Rule 1.7. Thus, because their respective attorneys have satisfied the requirements CT Page 16202 of Rule 1.7, any potential conflict under Rule 1.10(a) has been waived by Boyd and the hospital defendants in this case.
In conclusion, Carmody Torrance should not be disqualified from further representation in this matter. Both Rules 1.7 and 1.10 have been complied with. Furthermore, it is important to note that the individual attorneys involved here were not originally both working for the same firm (When Dr. Boyd's attorney, Augustus Southworth, filed his first appearance he was with the firm of Gager Peterson, not Carmody 
Torrance). They only became members of the same firm months after the filing the first appearances in the action. Thus, there is no appearance of any intention on the part of either attorney to misuse client confidences by each representing different defendants in the instant action.
III. Whether the Connecticut Rules of Practice or any Other Authority Prohibit the Co-Defendants' Individual Attorneys, Both of Whom are of the Same Firm, from Separately Cross-examining Deposition Witnesses.
WCC cites Practice Book §§ 13-30 and 5-4 and Tait's Handbook ofConnecticut Evidence (Third Edition) § 6-15 in support of its position that only one attorney from a single law firm may examine a witness at a deposition. An examination of the language of these authorities, however, reveals that the hospital defendants and Boyd are correct in their assertion that not one of them supports WCC's position. These authorities prohibit two attorneys representing the same party from separately examining witnesses at a deposition; they, however, do not prevent two attorneys representing separate parties in a cause of action from separately examining witnesses at a deposition.[4] A review of Connecticut case law concerning "unity of interest," however, helps to resolve this issue.
"As a general matter, because [unity] of interest is not to be presumed, separate defendants (or plaintiffs) are entitled to be treated as separate parties for the purposes of cross-examination . . . When, however, parties have substantially the same interests, they "should not be permitted to examine witnesses in relays." John T. Brady Co. v.Stamford, 220 Conn. 432, 452, 599 A.2d 370 (1991). "The primary test to determine the existence of a unity of interest is whether there are separate issues of liability as to the two entities or persons. If the liability bases differ, there is no unity of interest." Marshall v.Hartford Hospital, 65 Conn. App. 738, 750, ___ A.2d ___ (2001). In a medical malpractice action, "where there are separate issues of liability for the hospital and medical professionals involved, there is no unity of interest." Beach v. Regional School Dist No. 13, 42 Conn. App. 542, 550, CT Page 16203682 A.2d 118 (1996). See also Marshall, supra, 65 Conn. App. 750-51. "[T]he fact that parties may not have a unity of interest [however] does not necessarily constitute a violation of [The Rules of Professional Conduct]. Id., 551.
In this case there is no unity of interest because there are separate issues of liability as to the hospital defendants and Boyd. That is, Boyd was not involved in all of the acts of negligence alleged in count two of the plaintiff's complaint against the hospital defendants. Moreover, count three of the plaintiff's complaint against Boyd contains allegations of negligence not made against the hospital defendants in count two. A jury could potentially find the hospital defendants liable and not Boyd if it concludes that Vitone's death was proximately caused by the negligence of hospital employees other than Boyd. Thus, there are clearly differing bases of liability present between the two parties. Accordingly, Boyd and the hospital defendants should be treated as separate parties for the purpose of cross-examining witnesses at depositions. As separate parties, each is entitled to have their own attorney perform such cross-examinations.
The above finding of a lack of unity of interest between Boyd and the hospital defendants does not imply a conflict of interest. Beach, supra,42 Conn. App. 551. Although there are differing bases of liability here, at this point in the litigation, an adverse relationship has not developed between the parties. Furthermore, as stated previously, the parties have complied with the Rules of Professional Conduct governing conflicts of interest.
In summary, Boyd and the hospital defendants lack a unity of interest and should be treated as separate parties for the purpose of cross-examination of deposition witnesses. As separate parties, Boyd and the hospital defendants are each entitled to have their individual attorneys separately cross-examine witnesses at the taking of a deposition. Furthermore, although WCC has standing to argue that its co-defendants' attorneys have violated the Rules of Professional Conduct, there has been no violation is this case. The attorneys, here, obtained their clients' consent to continued representation and reasonably believed that their clients would not be adversely affected by the fact that they had come to be employed by the same firm-no more is required by the Rules of Professional Conduct.
WCC's motion for protective order is denied.
THOMAS G. WEST, J.