STATE OF CONNECTICUT *v.* ALEX MALAVE
(AC 15615)

Foti, Spear and Cretella, Js.

Argued November 10, 1997—officially released February 10, 1998

*Brien P. Horan* and *Lisa Gizzi*, with whom, on the brief, was *Darrell Cook*, for the appellant (defendant).

*Mary H. Lesser*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *John Waddock*, assistant state's attorney, for the appellee (state).

*Opinion*

SPEAR, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of two counts of assault in the first degree in violation of General Statutes § 53a-59 (a) (1).[1] The defendant claims that the trial court improperly (1) restricted his voir dire thereby

---

[1] General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."

preventing him from identifying venirepersons who were unqualified to serve as jurors, (2) instructed the jurors that they could draw an adverse inference from the defendant's failure to produce a certain witness, (3) emphasized the criminal records of the defendant and his key witness and (4) failed to instruct the jury that lack of motive should be considered in assessing reasonable doubt. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On June 12, 1994, Jose Garcia drove his brother, Oswaldo Garcia, to the Latin American Club located on South Colony Street in Meriden. After Jose left, Oswaldo was approached by a man who claimed that Oswaldo had wrongfully intervened in an altercation at the club the night before. After Oswaldo telephoned Jose and asked him to return to the club, a group gathered around Oswaldo. Someone in the group asked Oswaldo if he wanted to "go one on one" with the man who had originally approached him. The defendant threw a beer bottle at Oswaldo, and a fight erupted between Oswaldo and the defendant, who was supported by the other men. During the altercation, a hunting knife that Oswaldo carried fell to the ground. The defendant retrieved the knife and stabbed Oswaldo several times. Jose arrived during the fight and Oswaldo managed to get into Jose's car. Before Jose was able to drive away, the defendant stabbed Jose in the shoulder. During the drive to the hospital, Oswaldo removed the knife from Jose's shoulder and threw it out the window.

While at the hospital, Oswaldo told police officers that the defendant, whom he had known for several years, was the assailant. Thereafter, Jose and Oswaldo independently identified a photograph of the defendant as being of the assailant. The defendant's picture was selected from an array of photographs that was presented separately to the brothers by police detectives.

The officers obtained an arrest warrant for the defendant and arrested him several weeks later. Rejecting the defendant's alibi defense, the jury convicted him of both counts of assault in the first degree. This appeal followed.

I

Certain additional facts are necessary for the resolution of the defendant's first claim that the trial court improperly restricted his voir dire of prospective jurors. One venireperson, Leta Carson, stated during her voir dire that she had heard a woman make a statement to the effect that she had seen the defendant and had "already made up her mind as to whether or not he was guilty." Although she had sat across from the woman, Carson did not remember the woman's name. In response to the defendant's request to question Carson further as to the woman's identity, the trial court responded that Elizabeth Wright was the only other woman in the corridor. The state and the defendant accepted Carson as a juror and the trial court excused her with instructions to report for trial on the following Monday. Wright was called in thereafter and denied having expressed any opinion as to the defendant's guilt or innocence. The trial court refused to excuse her for cause and the defendant excused her with his second peremptory challenge.

The defendant then asked to recall Carson for further questioning in order to "pin down" the identity of the person who had made the remarks. The trial court conceded that Carson might have heard the remark while female venirepersons other than Wright were in the corridor, but refused to recall Carson that day. The subject proceedings were on a Wednesday, and the trial court offered to allow the defendant to recall Carson on Friday.

The trial court excused the three remaining female venirepersons on the panel, even though each denied hearing any comments about the case or the defendant. No jurors were chosen after Carson and at the end of the day the trial court again offered to allow the defendant to recall Carson on Friday. The defendant never recalled Carson nor did he ask the court to do so.

The defendant claims that the trial court impinged on his right to voir dire in five specific ways: (1) he was not allowed to question Carson sufficiently to ascertain the identity of the woman who allegedly made the remark concerning the defendant's guilt; (2) the court improperly refused to recall Carson before proceeding with the voir dire of the other venirepersons, thereby impairing his ability to exercise his peremptory challenges intelligently; (3) the defendant was not allowed to ask questions of Wright that he claimed were reasonably necessary to ascertain any potential prejudices that she may have harbored toward him; (4) the court improperly refused to ask each of the remaining female venirepersons on the Wednesday panel whether she had made the alleged remark; and (5) the trial court failed to inquire of the two jurors selected before Carson as to whether they had heard the alleged remark or whether one of them had made the remark.

The defendant has both a constitutional[2] and statutory right[3] to voir dire prospective jurors. Our Supreme Court has stated that "[w]e have recognized that the

---

[2] Article second, § 19, of the constitution of Connecticut as amended by article four of the amendments to the constitution provides in relevant part: "In all civil and criminal actions tried by a jury, the parties shall have the right to challenge jurors peremptorily, the number of such challenges to be established by law. . . ."

[3] General Statutes § 54-82f provides in relevant part: "In any criminal action tried before a jury, either party shall have the right to examine, personally or by his counsel, each juror outside the presence of other prospective jurors as to his qualifications to sit as a juror in the action . . . ."

purpose of examining members of the venire is twofold: first, to provide information upon which the trial court may decide which prospective jurors, if any, should be excused for cause; and second, to provide information to counsel which may aid them in the exercise of their right to peremptory challenge." *State* v. *Dolphin*, 203 Conn. 506, 512, 525 A.2d 509 (1987). The defendant's appeal centers on the second of those purposes as he claims that he was not able to obtain the information necessary to exercise his peremptory challenges intelligently.

In *Dolphin*, the Supreme Court also said that "[b]ecause of the wide range of cases submitted to juries and the impossibility of establishing a set pattern of questions appropriate for the voir dire examination of prospective jurors, the trial court is vested with broad discretion in determining the scope of counsel's inquiry. . . . The court has a duty to analyze the examination of venire members and to act to prevent abuses in the voir dire process. . . . Therefore, the court's actions ordinarily will not be disturbed unless the court has clearly abused its discretion or it appears that prejudice to one of the parties has resulted." (Citations omitted.) Id., 511–12.

We note initially that this claim is properly before us even though the defendant did not exhaust all of his peremptory challenges.[4] The *Dolphin* court instructs that "[t]he defendant, however, must be entitled to explore the area of possible bias or partiality before he can intelligently challenge for cause or exercise his right of peremptory challenge. . . . It cannot be said, then, that the defendant permitted a juror to serve whom he regarded as biased, without first having had the opportunity to inquire into that possible bias. Therefore, the fact that the defendant did not exercise all of

---

[4] The defendant used six of his eight peremptory challenges.

his peremptory challenges does not foreclose his ability to raise the present claim of error." (Citations omitted.) *State* v. *Dolphin*, supra, 203 Conn. 513–14 n.5.

Having considered the first two claims together as they both relate to Carson, we conclude that the first claim is not supported by the facts and the second claim has no merit.

After the trial court rejected the defendant's request to recall Carson and before proceeding further with the voir dire, the defendant exercised two additional peremptory challenges. With his third peremptory challenge, he excused a male former police officer without asking any questions about the alleged remark. In response to the court's questions, however, that venireperson stated that he had not overheard any comments or discussions by anyone with respect to the defendant's guilt or innocence. The defendant exercised his fourth peremptory challenge to excuse a male venireperson who stated to the court that he had not heard any comments about the defendant. The remaining venirepersons on that panel were excused by the court, with the exception of one male who was excused by the state.

The defendant does not claim that on Wednesday the trial court improperly excused the last three female venirepersons or any of the venirepersons. A new panel that could not have heard the alleged remark was brought in on Thursday. The defendant's claim as to the Wednesday venirepersons is that he was forced to exercise two peremptory challenges, after Carson was selected, without the benefit of further information from Carson as to the identity of the woman who had made the alleged remark. Both persons whom the defendant excused were male. Thus, neither could have been the person who made the alleged remark and both denied hearing the alleged remark. There is no

indication in the record that the defendant was restricted in any way in his questioning of those two venirepersons before he excused them. Because he did not ask either venireperson any questions about the alleged remark, we may fairly assume that he had reasons for exercising his peremptory challenges other than the possibility that the venirepersons were not being truthful in denying any knowledge of the alleged remark.

The defendant's third claim, that he was not allowed to ask questions of Wright in order to ascertain any of her potential prejudices, has no basis in fact. Before Wright was brought in, the court stated: "I will inquire of her, and then counsel can pursue it, if there is any reason to." When Wright was brought in, the court asked: "Well, I was just wondering whether you had expressed to anyone regarding your opinions in this case?" Wright answered no. During his voir dire, the defendant asked: "Have you made any remarks to any of the other panel members this morning about the way my client looks?" Wright answered no. The defendant asked no other questions regarding the alleged remark. The court clearly invited counsel to inquire further into the remarks and counsel took the opportunity to ask only one question. The defendant's claim that the trial court hampered him in questioning Wright is without merit.

The defendant's claim that the trial court refused to ask each of the remaining three female venirepersons on the Wednesday panel whether she had made the alleged remark is also without merit. The record clearly reveals that the trial court inquired of each venireperson whether she had heard any such remarks and each answered in the negative. While it is true that the court did not ask each person whether she had made the remark, all three were excused by the court without objection by the defendant. The defendant neither

sought further voir dire of any of the three women nor offered any explanation as to how the court impaired his right to voir dire.

The defendant's last claim with respect to his voir dire rights is that the court did not inquire of the two selected jurors whether they had heard the alleged remark or whether the female juror had made the alleged remark. This claim fails because the defendant did not ask the court to inquire of the two jurors who had been selected nor did he ask to recall Carson so that she could testify as to whether the female juror that was selected had made the alleged remark. The defendant simply asserts that the court had a duty to inquire, sua sponte, of the jurors selected because of its duty to "zealously protect" the rights of the accused. The defendant offers no analysis or authority for this specific claim. To allow the defendant to raise this claim on appeal after an adverse verdict, without making any effort to have the jurors questioned before trial, would be to condone the kind of conduct that we disapproved in *Pineau* v. *Home Depot, Inc.*, 45 Conn. App. 248, 260, 695 A.2d 14, cert. granted on other grounds, 243 Conn. 902, 701 A.2d 332 (1997). In that case, we said that " '[w]e do not allow parties to await the outcome of a matter before deciding whether to make an objection but require parties to raise the objection, if possible, when there is still an opportunity for the court to correct the proposed error.' " Id., quoting *Tessmann* v. *Tiger Lee Construction Co.*, 228 Conn. 42, 57 n.10, 634 A.2d 870 (1993).

In oral argument, the defendant referred to *State* v. *Brown*, 235 Conn. 502, 526, 668 A.2d 1288 (1995),[5] where

---

[5] The defendant did not cite *State* v. *Brown*, supra, 235 Conn. 502, in his briefs. We address this claim, despite the lack of briefing, because of the claim that the trial court violated a supervisory directive of our Supreme Court. See *State* v. *Patterson*, 230 Conn. 385, 400, 645 A.2d 535 (1994), on appeal after remand, 236 Conn. 561, 674 A.2d 416 (1996).

our Supreme Court, addressing a claim of jury misconduct, said that "[e]xercising our inherent supervisory power over the administration of justice, we now hold that henceforth a trial court must conduct a preliminary inquiry, on the record, whenever it is presented with any allegations of jury misconduct in a criminal case, regardless of whether an inquiry is requested by counsel. Although the form and scope of such an inquiry lie within a trial court's discretion, the court must conduct some type of inquiry in response to allegations of jury misconduct. That form and scope may vary from a preliminary inquiry of counsel, at one end of the spectrum, to a full evidentiary hearing at the other end of the spectrum, and, of course, all points in between."

We do not believe that *Brown* applies to the present case for three reasons. First, the trial court received the information and conducted the voir dire proceedings before the *Brown* decision was released. Second, the remarks were allegedly made by a person in the venire before the jury was empaneled. There is no indication that any juror, after being selected, engaged in any form of misconduct. Finally, we are not persuaded that the supervisory mandate of *Brown* sweeps so broadly as to require the trial court to recall, sua sponte, selected jurors for further questioning during voir dire regarding possible taint from an improper remark by someone in the venire. *State* v. *Brown*, supra, 235 Conn. 502, operates in the sphere of juror misconduct claims, while the voir dire process properly allows counsel to investigate fully bias, preconceived notions and the like. The voir dire process is designed to weed out those who are unfit to serve because of prejudicial notions. The trial court in no way impeded the defendant from exercising his voir dire rights.

II

The defendant next claims that the trial court improperly instructed the jury that it could draw an adverse

inference against the defendant because he failed to call Cindy Castro to testify in support of his alibi defense. Such a charge is commonly referred to as a *Secondino* or missing witness charge. See *Secondino* v. *New Haven Gas Co.*, 147 Conn. 672, 165 A.2d 598 (1960).[6] Certain additional facts are necessary for our resolution of this issue.

The defendant testified that he did not commit the assaults and that he was inside the club playing pool when the fight erupted. He presented testimony in support of his alibi defense from several witnesses, including Maria Castro. The evidence showed that Cindy Castro was in the club with Maria Castro and the defendant. The state requested a *Secondino* charge because of the defendant's failure to call Cindy Castro.

The defendant makes three claims of impropriety regarding the court's *Secondino* instruction, two of which are not reviewable. The defendant claims that (1) the *Secondino* rule should be abandoned, (2) the trial court improperly confused the requirement that Cindy Castro be available to testify with the requirement that she be a witness whom the defendant would naturally produce and (3) the availability of Cindy Castro was not sufficiently established to support a *Secondino* instruction.

With respect to the first claim, the *Secondino* rule was established by a Supreme Court decision and it is axiomatic that this court cannot review or reverse Supreme Court precedent. *State* v. *Panella*, 43 Conn. App. 76, 83, 682 A.2d 532, cert. denied, 239 Conn. 937, 684 A.2d 710 (1996); *State* v. *Oliver*, 41 Conn. App. 139,

---

[6] *Secondino* v. *New Haven Gas Co.*, supra, 147 Conn. 675, states that " '[t]he failure of a party to produce a witness who is within his power to produce and who would naturally have been produced by him, permits the inference that the evidence of the witness would be unfavorable to the party's cause.' "

146, 674 A.2d 1359, cert. denied, 237 Conn. 920, 676 A.2d 1374 (1996). While the defendant is aware that we cannot review this claim, he makes it nonetheless to preserve the record in the event of Supreme Court review.

With respect to the defendant's second claim, the trial court instructed the jury as follows: "In order to make this inference in this case, you must first find that it is more probable than not that Cindy Castro was available and, second, that she is a witness whom the defendant would naturally produce. Whether the witness is available is a question of fact for you to determine, before you draw an adverse inference from [Cindy Castro's] absence. Availability may be determined not only from mere physical presence or accessibility, but also from the usefulness or nature of the expected testimony. Also relevant is whether the witness is in such a relationship with the defendant that it is likely that her presence could be produced."

The defendant claims that this language has been disavowed by our Supreme Court in *Shelnitz* v. *Greenberg*, 200 Conn. 58, 509 A.2d 1023 (1986), because the language "overlaps the two distinct requirements of the [*Secondino*] rule." Id., 74. The defendant asserts that the jury may have "improperly drawn the adverse inference based solely upon the anticipated 'usefulness or nature of the expected testimony' of Cindy Castro" even though she was not available.

Practice Book § 4185 provides in relevant part: "The [appellate] court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ." The defendant made the following exception to the trial court's instruction: "I also except to it for these specific circumstances, given the factors

about whether or not she is available, and whether or not she is merely a cumulative of evidence witness. I think it was inappropriate." This exception did not distinctly bring the defendant's present claim to the attention of the trial court.

The reason for exceptions to a court's charge is to alert the court to a possible error at a time when the trial court can correct it. See *Mauro* v. *Yale-New Haven Hospital*, 31 Conn. App. 584, 592, 627 A.2d 443 (1993). The exception that was taken certainly addresses availability. The claim that the defendant makes on appeal is not detailed in that exception, nor was the court put on notice in any way of that claim. We, therefore, decline to review this unpreserved claim.[7]

The last aspect of the defendant's *Secondino* claim is that the availability of Cindy Castro was not established. Our review of the transcript shows that Maria Castro testified that she and Cindy Castro were roommates in New Haven and that she answered affirmatively to the question: "And you still see [Cindy Castro]?" In *State* v. *Hudson*, 14 Conn. App. 463, 469, 541 A.2d 534, cert. denied, 209 Conn. 803, 548 A.2d 439 (1988), we found that evidence that a "missing" witness lived in New Haven at the time of trial and had been seen three weeks before trial was sufficient for the jury to find availability. We conclude that the evidence here was sufficient on the availability prong of *Secondino*.

III

The defendant next claims that the trial court improperly emphasized the criminal records of the defendant

---

[7] Our Supreme Court has held that "[a] party who fails to make a timely objection to the giving of a *Secondino* charge will be deemed to have waived the issue for appeal. The giving of a *Secondino* charge is purely an evidentiary issue and is not a matter of constitutional dimensions." (Internal quotation marks omitted.) *State* v. *Taylor*, 239 Conn. 481, 490, 687 A.2d 489 (1996), cert. denied, 521 U.S. 1121, 117 S. Ct. 2515, 138 L. Ed. 2d 1017 (1997).

and the defendant's key witness in instructing the jury on credibility. We are unpersuaded.

The defendant asserts that the trial court unfairly emphasized that the defendant had been convicted of prior felonies without balancing its instruction by mentioning that Jose Garcia, a state's witness, had two prior felony convictions that could be considered in the assessment of his credibility. The defendant also asserts that the court acted unfairly in mentioning that the jury could consider, in assessing credibility, that a witness has been convicted of a crime involving dishonesty, such as shoplifting. The defendant's key witness, Maria Castro, was the only witness who had admitted to a shoplifting conviction.

With respect to the felony convictions, the trial court properly explained to the jury that it was not to use the defendant's prior felony convictions as a basis for assuming that the defendant committed the crimes charged, but rather that any consideration of those prior felonies was limited to assessing the defendant's credibility. Indeed, the court would have been remiss in not giving such an instruction. See State v. Curley, 25 Conn. App. 318, 328, 595 A.2d 352, cert. denied, 220 Conn. 925, 598 A.2d 366 (1991).

The court's comments with respect to shoplifting merely differentiated that crime from felony convictions in terms of assessing a witness' credibility. The trial court did not mention the witness by name and the instruction was clearly designed to assist the jury in assessing credibility.

The court did give a general charge with respect to the jury's consideration of the felony conviction of any witness, to which no exception was taken. Although it might have been preferable to mention Jose Garcia's convictions, in viewing the charge as a whole, we find no unfair emphasis.

## IV

The defendant's final claim is that the trial court improperly refused to instruct the jury as to the defendant's lack of motive to commit the crimes. We find no merit to this claim.

The defendant properly points out that "[a] request to charge which is relevant to the issues of the case and which is an accurate statement of the law must be given." *State* v. *Casey*, 201 Conn. 174, 178, 513 A.2d 1183 (1986). Our Supreme Court stated in *State* v. *Pinnock*, 220 Conn. 765, 790, 601 A.2d 521 (1992), that "[a]n instruction on motive and lack of motive is sometimes required because [e]vidence tending to show the existence or nonexistence of motive often forms an important factor in the inquiry as to guilt or innocence of the defendant." (Internal quotation marks omitted.) The *Pinnock* court went on to hold that "[i]n this case, the evidence warranted an instruction concerning the possible tendency of an absence of evidence of motive to raise a reasonable doubt, and the defendant made a timely request to charge. The state adduced no evidence of the defendant's motive to kill [the victims]." Id., 791. Our Supreme Court has also held that "[i]f, however, the state introduces evidence tending to demonstrate a motive to commit the offense, then the trial court is not obligated to give such an instruction." *State* v. *Raguseo*, 225 Conn. 114, 133, 622 A.2d 519 (1993).

The defendant asserts that there was no evidence of motive based on Oswaldo Garcia's testimony that he did not ascribe a particular motive to the defendant. There was evidence from which the jury could have inferred that there was enmity between the defendant and Oswaldo Garcia because of prior hostile encounters

and a prior dispute over a woman. Therefore, the court properly refused to charge on motive.

The judgment is affirmed.

In this opinion the other judges concurred.