MACELLIS GLASS, EXECUTOR (ESTATE OF JUDITH W. GLASS) *v.* PETER MITCHELL CONSTRUCTION LEASING AND DEVELOPMENT CORPORATION
(AC 16730)

O'Connell, C. J., and Sullivan and Daly, Js.

Argued May 5—officially released September 29, 1998

*Wesley W. Horton*, with whom were *Susan M. Cormier* and, on the brief, *John A. Reed* and *Michele C. Camerota*, legal intern, for the appellant (named defendant).

*Vincent M. Musto*, with whom was *Lillian C. Gustilo*, for the appellee (plaintiff).

*Opinion*

O'CONNELL, C. J. The origin of this case is a fatal motor vehicle accident. The defendant appeals from the judgment, rendered after a jury trial, in favor of the plaintiff executor of the decedent's estate. The defendant claims that the trial court improperly (1) found a unity of interest among four defendants for voir dire purposes, (2) failed to set aside the verdict despite the absence of proximate cause, (3) failed to set aside the verdict because the evidence was insufficient to establish that the defendant's negligence equaled or exceeded that of the plaintiff, (4) admitted evidence of the lack of a stop sign, (5) charged the jury concerning the defendant's duty to erect a stop sign and (6) refused

to submit to the jury the defendant's requested interrogatories on apportionment. Because we reverse the judgment of the trial court as to the first issue, we do not reach the defendant's remaining five claims.

The following facts are relevant to the disposition of this appeal. On April 4, 1989, Judith W. Glass operated a motor vehicle on an unfinished roadway located on private property, from which she entered a public roadway where her car was struck by another vehicle and she was killed. The plaintiff, as executor of the decedent's estate, brought a negligence action in August, 1990, against six entities: The Jewish Home for the Elderly (Jewish Home), the owner of the property on which the unfinished roadway is located; Peter Mitchell Construction Leasing and Development Corporation (Mitchell), the general contractor for the roadway site work; Gonchor and Sput Architects and Planners (Gonchor and Sput), the architect of the project; James W. Tate and Associates (Tate), the landscape architect for the site work; Huntington Company and Darien Asphalt Paving Company.[1] The action was withdrawn as to Huntington Company and Darien Asphalt Paving Company before the start of jury selection.

Shortly before voir dire, the trial court granted the joint motion of the four remaining defendants to sever various third party and cross claims that they had brought against one another. The plaintiff then filed a motion requesting the court to declare the existence of a unity of interest among the four defendants for the purposes of making peremptory challenges during jury selection. General Statutes § 51-241.[2] The defendants

---

[1] Because it is undisputed that the driver of the vehicle that struck the decedent was not at fault, the plaintiff did not bring an action against him.

[2] General Statutes § 51-241 provides: "On the trial of any civil action to a jury, each party may challenge peremptorily three jurors. Where the court determines a unity of interest exists, several plaintiffs or several defendants may be considered as a single party for the purpose of making challenges, or the court may allow additional peremptory challenges and permit them

argued that their individual interests were sufficiently dissimilar to warrant separate peremptory challenges. After reading the complaint against the four defendants, the third party complaint, the responses to the complaints and the special defenses, the trial court held that "while the interests of the defendants may not be identical, the interests are similar and based upon the pleadings [the trial court concluded that] they are substantially similar."[3] The trial court, therefore, restricted the defendants collectively to only four peremptory challenges.

Following the selection of the six regular jurors, but prior to the selection of the alternates, the plaintiff withdrew the action against three defendants, leaving Mitchell as the only remaining defendant. Mitchell then filed a motion for a mistrial on the ground that because the jury was picked under the unity of interest rule applying to four defendants, Mitchell, as the sole remaining defendant, was prejudiced. The trial court denied the motion and instructed the plaintiff and Mitchell to select three alternates. At that point, Mitchell had two peremptory challenges remaining and was granted one additional challenge for use in the selection of alternate jurors. The alternates chosen by the parties were ultimately excused by the court and the case was decided by the six original jurors.

During trial, the contract between the Jewish Home and Mitchell was entered into evidence. The relevant provisions explicitly required Mitchell to do whatever

---

to be exercised separately or jointly. For the purposes of this section, a 'unity of interest' means that the interests of the several plaintiffs or of the several defendants are substantially similar."

The right to peremptory challenges is guaranteed by article first, § 19, of the constitution of Connecticut, as amended by article four of the amendments. " 'In all civil and criminal actions tried to a jury, the parties shall have the right to challenge jurors peremptorily, the number of such challenges to be established by law.' " *State* v. *McDougal*, 241 Conn. 502, 519, 699 A.2d 872 (1997).

[3] There is nothing more in the transcript to identify the grounds on which the trial court found "substantially similar" interests.

was reasonably necessary to ensure public safety on the unimproved roadway. This included erecting traffic signs or taking other precautions as required by then existing conditions or by local ordinances. The contract further stated that Mitchell was to be held responsible for all damages caused by its failure to provide such proper safeguards. On more than one occasion, Mitchell attempted to abdicate its responsibility over the safety of the roadway by requesting, via letter, that the contract be modified. The Jewish Home never responded to Mitchell's requests.

The jury returned a verdict in favor of the plaintiff in the amount of $2,080,500, reduced to $1,040,250 by the fifty percent comparative negligence of the plaintiff's decedent. The defendant now appeals from the trial court's initial finding of unity of interest among the defendants.

The defendant claims that according to *Beach* v. *Regional School District Number 13*, 42 Conn. App. 542, 682 A.2d 118, cert. denied, 239 Conn. 939, 684 A.2d 710 (1996), the trial court improperly found a unity of interest among Mitchell, the Jewish Home, Tate, and Gonchor and Sput, which restricted Mitchell's ability to select an impartial jury. We agree.

"[T]he decision of whether parties share a 'unity of interest' lies in the trial court's discretion." Id., 549. "In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done. . . . There is no hard and fast rule by which an abuse of discretion may be determined but, in general, for an exercise of discretion not to amount to an abuse, it must be legally sound and there must be an honest attempt by the court to do what is right and equitable under the circumstances of the law, without the dictates

of whim or caprice." (Citation omitted; internal quotation marks omitted.) *State* v. *Medley*, 48 Conn. App. 662, 665–66, 711 A.2d 1191, cert. denied, 245 Conn. 915, 718 A.2d 19 (1998).

In *Beach* v. *Regional School District Number 13*, supra, 42 Conn. App. 544, the plaintiff, a food service worker at a regional high school, sought to recover for personal injuries she sustained when she fell on an icy sidewalk at the school. The defendants named were, inter alia, the superintendent of schools, the supervisor of buildings and grounds, and the acting head custodian. Id., 543 n.1. In her complaint, the plaintiff alleged identical counts of negligence against each of these individual defendants. Id., 550. In response to the plaintiff's allegations, the defendants filed the same answer and asserted the same special defenses. Id., 544.

Prior to trial, the plaintiff filed a motion requesting the court to find that these individual defendants had a unity of interest and that the court should consider them a single party for the purpose of making peremptory challenges during jury selection. Id., 545. The trial court denied the motion and allowed the defendants a total of ten peremptory challenges to the plaintiff's four. Id., 545–46.

In affirming the trial court's decision, we held that "[t]he fact that the plaintiff's complaint states the same counts of negligence against each defendant is not dispositive.[4] In her complaint, the plaintiff alleges that the

---

[4] In her motion, the plaintiff in *Beach* claimed that unity of interest should be found among the individual defendants because " '(1) Identical allegations of negligence were asserted against the defendants in a one-count complaint; (2) The defendants had the same counsel before and at trial; (3) They filed the same answer to the complaint; (4) They asserted the same special defenses; (5) They were insured by the same insurance carrier under the same policy; (6) The institutional defendants agreed to indemnify the individual defendants from any adverse verdict; and (7) The individual defendants conceded that they had no conflict with each other.' " *Beach* v. *Regional School District Number 13*, supra, 42 Conn. App. 548–49.

three defendants were negligent in failing to remedy the icy condition, to warn of that condition, and to place barricades around the icy sidewalk. The duty of each individual defendant toward remedying this alleged condition is distinct. The jury might determine that the parties in supervisory positions failed to delegate the duty to clear the sidewalks properly or to implement a proper policy. The jury might determine that the person assigned to clear the sidewalks was negligent. The jury might determine that each party was negligent, but each in a *separate and distinct manner*, or that one individual defendant's role was ministerial, whereas another defendant's role was discretionary. The liability of each, therefore, could differ." (Emphasis in original.) Id., 550–51.

The *Beach* court further stated that the identical special defenses were not dispositive and that "the defendants' conflict was not with each other, but . . . arises in terms of what their different [interests are] or in defending themselves against the claims of the plaintiff." (Internal quotation marks omitted.) Id., 551–52.

Because the unity of interest issue was one of first impression for the *Beach* court; id., 549; that court examined the legislative history of § 51-241 and found specific examples of where there may be substantially similar interests among parties. These examples included (1) the interest of an agent and principal, when agency is not denied, (2) the interest of a motor vehicle driver and motor vehicle owner when permission to use the vehicle is not in dispute, (3) where multiple plaintiffs were passengers injured in the same motor vehicle accident and (4) in an instance of respondeat superior where the employer is liable for the employee's negligent activities. The legislative history cited by the *Beach* court also discusses an example involving an instance of medical malpractice, in which no unity of interest could be found because there were separate

issues of liability for the hospital and the medical professionals involved.

In the present case, as in *Beach* and also like the medical malpractice example discussed by the legislators, the interests among the multiple defendants might have been found by a jury to be sufficiently antagonistic to preclude the finding of unity of interest. The jury might have found that Mitchell was negligent in failing to install the stop sign and also that the Jewish Home was negligent in its supervision of such installation. The jury might have further found that Gonchor and Sput or Tate was negligent in failing to implement properly plans providing for traffic safeguards or that some combination of two or more parties' negligence proximately caused the decedent's death. Moreover, the jury might have found that Mitchell's contract with the Jewish Home made him solely responsible for keeping the unfinished roadway safe, and that the Jewish Home's duty in that regard might have been delegated and thus nonexistent. Finally, the jury might have found that neither Tate nor Gonchor and Sput owed any duty to keep the roadway safe for the public. In sum, the jury might have determined as in *Beach* that "each party was negligent, but each in *a separate and distinct manner*, or that one . . . defendant's role was . . . discretionary." (Emphasis in original.) Id., 551.

The adversity of Mitchell's interest to the other defendants is even more apparent when considering the third party and cross claims among them. The four defendants blame each other and, in fact, jointly filed a motion to sever these conflicting claims to prevent the jury from being confused. It remains irrelevant to the existence of possible differing duties among the defendants that the allegations of negligence against the four defendants were identical. See id.

It is significant that in *Beach* we found no unity of interest where the individual defendants were all

employees of the same institution and where there existed relationships that closely resembled those of agents or servants and principals. In the present case, the defendants were an aggregation of independent contractors and the owner of the property on which the road was constructed. The relationship of the defendants in the present case makes a finding of unity of interest even more inappropriate than it was in *Beach*.

The plaintiff claims that even if the court improperly found unity of interest, to prevail on his claim the defendant must show that he has been harmed. The plaintiff asserts that because the defendant failed to exhaust all of his peremptory challenges, he cannot prove prejudice and his claim must fail. In *State* v. *Malave*, 47 Conn. App. 597, 602, 707 A. 2d 307, cert. granted, 244 Conn. 913, 713 A.2d 832 (1998), this court held that in situations involving peremptory challenges, the trial court's " 'actions ordinarily will not be disturbed unless the court has clearly abused its discretion *or* it appears that prejudice to one of the parties has resulted.' " (Emphasis added.) Because we conclude that the trial court abused its discretion when it found unity of interest among the defendants, we need not address whether prejudice resulted to Mitchell.[5]

---

[5] Even if we were compelled to address the prejudice issue, Mitchell would nevertheless prevail in its claim because it was not required to exhaust all of its peremptory challenges before raising a challenge to the makeup of the jury that ultimately decided the case, as contrasted to an objection to the seating of a specific juror. In *State* v. *Malave*, supra, 47 Conn. App. 602–603, this court held that the "fact that the defendant did not exercise all of his peremptory challenges does not foreclose his ability to raise the present claim of error." (Internal quotation marks omitted.) The claim was properly before the court because the defendant "must be entitled to explore the area of possible bias or partiality before he can intelligently . . . exercise his right of peremptory challenge." (Internal quotation marks omitted.) Id., 602. In this case, the possible bias against Mitchell did not arise until the three other defendants had settled, at which time the jury had been selected. The fact that Mitchell still had two peremptory challenges remaining at that time was irrelevant—the entire voir dire process had already been tainted.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.